UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MARCUS HAGOOD,<br><br>    Defendant. | Case No. CR-13-00393 RMW<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>[Re Docket No. 31] |

Defendant Marcus Hagood filed a motion to suppress evidence pursuant to the Fourth Amendment. Dkt. No. 31. Because defendant did not have a reasonable expectation of privacy in his IP address, and the government's search warrant was supported by probable cause, the court DENIES the motion to suppress.

## I. BACKGROUND

Defendant is charged with possession and distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B). The FBI discovered child pornography on Hagood's computer through the following steps:

1. On January 14, 2011 an undercover FBI agent connected to GigaTribe, a closed peer-to-peer file sharing program. The agent connected to the user "Shouta" and downloaded over 100 files suspected to contain child pornography.
2. The FBI agent used a "packet sniffing" program known as Commview to obtain the IP address of the user "Shouta." The FBI describes this as "a publicly available network analysis tool" that "looks at network traffic between the user and whomever they are communicating with online." Dkt. No. 33-1 (Kelley Decl.) at ¶ 5.
3. The FBI then issued an administrative subpoena to the appropriate Internet service provider (in this case, AT&T) for information about the account holder associated with that IP address.
4. On January 24, 2011 AT&T provided the FBI with records showing that the IP address was assigned to defendant during the time that the FBI downloaded the files, and provided defendant's home address.
5. On June 24, 2011 the FBI applied for a search warrant for defendant's home, based in part on the assertion that child pornography is unlikely to be deleted.
6. On November 18, 2011 the FBI executed the search warrant and found over 50,000 images and over 400 videos of child pornography on defendant's electronic devices.

Defendant challenges the constitutionality of steps 2 and 5 of this process.

## II. ANALYSIS

### A. No Reasonable Expectation of Privacy in IP Address

A search for Fourth Amendment purposes occurs when the government violates an individual's expectation of privacy that "society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

Determining whether this type of search violated defendant's Fourth Amendment rights involves two questions: "(1) whether the individual demonstrated an actual or subjective expectation of privacy in the subject of the search or seizure; and (2) whether this expectation of privacy is objectively justifiable under the circumstances." *Free Speech Coal, Inc. v. Att'y Gen. of U.S.*, 677

F.3d 519, 543 (3d Cir. 2012). To be objectively justifiable, a defendant's expectation of privacy must be more than rational; society must be willing to recognize it as legitimate. *See United States v. Jacobsen*, 466 U.S. 109, 122 (1984) ("The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities."); *Rakas v. Illinois*, 439 U.S. 128, 143 n. 12 (1978) ("Obviously, however, a 'legitimate' expectation of privacy by definition means more than a subjective expectation of not being discovered.").

Many courts have already considered whether individuals have a reasonable expectation of privacy in peer-to-peer sharing programs, and have concluded that even users of "closed" peer-to-peer programs, like GigaTribe, do not have a reasonable expectation of privacy in the information they share using such programs. *See, e.g., United States v. Ladaeu*, Crim. No. 09-10021-FDS, 2010 WL 1427523 (D. Mass. Apr. 7, 2010) (rejecting argument that GigaTribe's privacy safeguards made defendant's expectation of privacy objectively reasonable); *United States v. Sawyer*, 786 F. Supp. 2d 1352 (N.D. Ohio 2011) (same); *United States v. Brooks.*, No. 12-CR-166 (RRM), 2012 WL 6562947 (E.D. New York Dec. 17, 2012) (same); *United States v. Soderholm*, No. 11-CR-3050, 2011 WL 5444053 (D. Neb. Nov. 9, 2011) (same, discussing generic "closed" peer-to-peer network).[1]

In this case, defendant does not challenge the FBI's discovery of the content of the images on the Gigatribe account, but instead challenges a particular aspect of the FBI's investigation: its use of a packet sniffer called Commview to uncover defendant's IP address. Defendant argues that "[a]lthough Mr. Hagood granted his 'friends' access to the content of his files, he did not grant access to his IP address or other identifying information. On the contrary, he relied upon GigaTribe's assurance that such information would not be disclosed to anyone absent a valid court order." Dkt. No. 35 at 3.

GigaTribe's privacy policy acknowledges that GigaTribe collects a user's IP address, *see* ¶ 1(c), and then states:

---

[1] None of these opinions discuss how the government obtained the defendant's IP address.

ORDER DENYING MOTION TO SUPPRESS
13-CR-00393
- 3 -

> GigaTribe shall take appropriate organizational and technical measures to protect the personal data and traffic data[2] provided to it or collected by it with due observance of the applicable obligations and exceptions under the relevant legislation. Your personal data can only be accessed by authorized employees or consultants of GigaTribe. Your traffic data are never decrypted.

Dkt. No. 31-2 (GigaTribe Privacy Statement) at ¶ 4. Defendant emphasizes that the government obtained the IP address "using specialized software," and not from GigaTribe. Dkt. No. 35 at 4.

Although GigaTribe's privacy policy may support defendant's subjective expectation of privacy, it does not support any legitimate, objective expectation. As a general matter courts have not recognized any reasonable expectation of privacy in an IP address. *See*, *e.g.*, *United States v. Forrester*, 512 F.3d 500, 509-10 (9th Cir. 2008) (analogizing IP addresses to the outside of a letter, and the monitoring of an IP address to a pen register).

In this case, defendant's specific complaint is that the government circumvented his expectation that his IP address would only be viewed by Gigatribe. This is not persuasive for at least two reasons. First, GigaTribe's policies do not actually promise to keep IP addresses a secret, they only promise to take "appropriate organizational and technical measures" to protect data about users. Dkt. No. 31-2 at ¶ 4. Second, GigaTribe's policies also state that "You acknowledge and agree to use the GigaTribe software solely for lawful purposes. In this respect, you may not: (a) download, or provide access to, any content protected by copyright laws, (b) exchange illegal content (racist or pedophilic materials, for example). Any account that violates these rules will be terminated." Dkt. No. 33-1 (GigaTribe End User License Agreement) at pg. 17 ¶ 7.4. In fact GigaTribe states that illegal use may be reported to local authorities. *Id.* at pg. 19 (GigaTribe FAQ). Thus, any expectation that defendant had in GigaTribe's security was both tenuous and misguided. Defendant's use of the GigaTribe software for illegal purposes removed any legitimate, reasonable expectation of privacy that he may have enjoyed.

---

[2] Presumably, an IP address could be "traffic data."

ORDER DENYING MOTION TO SUPPRESS
13-CR-00393                                    - 4 -

### B. The Warrant was Supported by Probable Cause

Defendant argues that the government's affidavit supporting the search warrant lacks the required probable cause because (1) the information in the affidavit was "stale" as that term is used in Fourth Amendment analysis and (2) the search warrant was overbroad.

#### 1. The affidavit was not stale

Defendant alleges that the information in the affidavit was too stale to establish probable cause because the government waited nine and half months from the time of the downloads before requesting a warrant. Defendant cites *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990) in support of his argument that the FBI's affidavit in support of the application for a search warrant lacked foundation. Defendant argues that he should not be considered a "child pornography collector" and that the affiant lacked the expertise to describe collector habits. Dkt. No. 31 at 9.

In *Weber*, the Ninth Circuit criticized the government's use of the "collector" description because the defendant only had "one proven order" of child pornography. 923 F.2d at 1341. The court concluded that the "expert" testimony in the government's affidavit was not linked to the facts of that case or the particular defendant. *Id.* at 1345. The court did not state that expert testimony could never support a "collector" conclusion, and cited with approval *United States v. Rabe*, 848 F.2d 994 (9th Cir. 1988), because in that case "there was expert testimony in the affidavit which addressed the facts of the defendant's case and specifically concluded that based on those facts, the defendant was a pedophile." *Weber*, 923 F.2d at 1345.

This case is closer to *Rabe* than *Weber*. In his initial search through GigaTribe, the FBI agent uncovered over 100 images that were indicative of child pornography. Dkt. No. 31-3 (application for search warrant) at ¶ 54. That number of images provides support for the affiant's use of the "collector" label to characterize defendant. *See United States v. Pappas*, 592 F.3d 799, 804 (7th Cir. 2010). The affidavit then included a description of "collector" characteristics, which informed the magistrate that "the collector rarely, if ever, disposes of the collection," "the size of the collection tends to increase," and that "individuals who utilize a collection . . . are unlikely to part with [their collection]." Dkt. No. 31-3 at ¶ 50. Furthermore, the affiant explained the basis for his conclusions about collectors generally, stating that he "received specialized training and instruction in the field

of sexual exploitation of minors" and "conducted, coordinated, and participated in numerous investigations relating to the sexual exploitation of minors." Dkt. No. 31-3 at ¶ 4. Thus, in this case the affiant both provided a basis for his opinions on child pornography collectors and used specific facts linking the defendant's conduct to the collector profile.

### 2. The search warrant was not overbroad

Defendant argues that the search warrant was overbroad because the government had no proof that the defendant distributed the images on the GigaTribe account. Many courts, including *Ladaeu*, *Sawyer*, and *Brooks*, have concluded that sharing images on GigaTribe constitutes distribution. Defendant's argument that someone else may have made use of defendant's IP address is speculation and does not negate the existence of a "fair probability" that evidence would be found at defendant's residence. Therefore, the government had probable cause to support the warrant.

### III.  ORDER

For the reasons stated, the motion to suppress is DENIED.

Dated: June 26, 2014

                                                             *Ronald M. Whyte*
                                                             Ronald M. Whyte
                                                             United States District Judge